UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL T. SANFORD,

      Plaintiff,                         Civil Action No. 12-11132

v.                                    HON. MARK A. GOLDSMITH
                                    U.S. District Judge
                                    HON. R.  STEVEN WHALEN

COMMISSIONER OF SOCIAL         U.S. Magistrate Judge
SECURITY,

      Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Paul T. Sanford ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final  decision of Defendant Commissioner denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act.  Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment be DENIED, and that Plaintiff's Motion for Summary Judgment  be GRANTED to the extent that the case be remanded for further administrative proceedings.

## PROCEDURAL HISTORY

Plaintiff originally applied for DIB and SSI on March 14, 2006 (Tr. 60).  After the initial denial of the claim, Plaintiff requested an administrative hearing, which was held on

December 15, 2008 before Administrative Law Judge ("ALJ") Michael F. Wilenkin (Tr. 60). On February 3, 2009, ALJ Wilenkin concluded that Plaintiff was capable of a limited range of sedentary work (Tr. 46-51).

On February 19, 2009, Plaintiff reapplied for DIB and SSI, alleging disability as of January 31, 2009 (Tr. 132, 134). After the initial denial of the claims, Plaintiff again requested an administrative hearing, held on July 7, 2010 in Chicago, Illinois before ALJ Theodore Grippo (Tr. 8). Plaintiff, represented by attorney Steven Harthorn, testified by teleconference (Tr. 16-35), as did Vocational Expert ("VE") Michael Rosko (Tr. 35-36), and Ellen Mayfield, Plaintiff's treating psychologist (Tr. 12-15). On November 9, 2010, ALJ Grippo found Plaintiff not disabled (Tr. 74). On January 27, 2012, the Appeals Council denied review (Tr. 1-7). Plaintiff filed for judicial review of the Commissioner's decision on March 14, 2012.

## **BACKGROUND FACTS**

Plaintiff, born February 3, 1963, was 47 when the ALJ Grippo issued his decision (Tr. 132). He obtained a GED and worked previously as a supervising housekeeping aide (Tr. 163, 166). His application for benefits alleges disability as a result of depression, anxiety, panic attacks, hypertension, high cholesterol, a disc herniation, and degenerative disc disease (Tr. 162).

### A. The Testimony of Ellen Mayfield, Ph.D.

Dr. Mayfield testified before ALJ Grippo that she began treating Plaintiff in February,

2009 for major depression, anxiety, and mood swings (Tr. 12-13). She stated that currently prescribed psychotropic medication was effective in treating his mood swings, adding that Plaintiff also took pain medication for a degenerative spine condition (Tr. 13-14). Dr. Mayfield opined that Plaintiff had "been losing ground emotionally and cognitively," noting that his psychological symptoms created marital problems (Tr. 13-14). She opined that Plaintiff was not embellishing his psychological symptoms, but acknowledged that his physical condition was "out of [her] province" (Tr. 14). She stated that she volunteered to testify because she believed that Plaintiff was unable to work due to back pain (Tr. 15). She reported that over the course of a 45-minute counseling session, back pain obliged Plaintiff to stand three or four times (Tr. 15).

### B. Plaintiff's Testimony

Plaintiff testified that he dropped out of school after ninth grade but later obtained a GED (Tr. 16-17). He reported working for Detroit Receiving Hospital for 19 years as a housekeeper which required him to wax and strip floors, move furniture and beds, and perform cleaning chores (Tr. 17). He stated that back pain forced him to stop working in 2006 (Tr. 17). He stated that he received a Workers' Compensation redemption and was currently on disability retirement (Tr. 18).

Plaintiff testified that he experienced constant back pain (Tr. 18). He stated that he currently used a prescribed back brace and cane (Tr. 18-19). In addition to back problems, Plaintiff reported that right leg swelling and blood clots required him to take blood thinners (Tr. 19). He stated that right leg pain prevented him from walking significant lengths (Tr.

-3-

20).  He alleged other cardiovascular problems, including chest pain, fainting spells, and shortness of breath (Tr. 21).  He reported that pain and physical limitations depressed him, crediting Dr. Mayfield for improving his outlook on life (Tr. 22).  He stated that he took Vicodin for pain relief three to four times a day (Tr. 22).

Plaintiff indicated that his ability to sit was limited by right leg pain (Tr. 23).  He stated that he was unable to walk more than five steps without experiencing pain (Tr. 24).  He denied the ability to bend or stoop, noting that he was unable to tie his own shoes (Tr. 25).  He stated that on a typical day, he alternated between lying in bed and lying in a reclining chair (Tr. 25).  He alleged that he lacked the concentration to read and only "glance[d]" at the television (Tr. 25).  He stated that he currently lived in an apartment with his wife and five-year-old daughter (Tr. 26).  He denied performing housework or grocery shopping (Tr. 26-27).  He reported avoiding driving and public places due to dizziness and panic attacks (Tr. 27-28).  He acknowledged that he was "snappy" with "everybody" (Tr. 28).

In response to questioning by the ALJ, Plaintiff denied problems with marijuana and alcohol, noting that he stopped using both in January, 2010 (Tr. 34).  He alleged that emergency room records stating that he drank a pint of alcohol every day were incorrect (Tr. 34-35).

### C.    Medical Evidence

-4-

### 1.  Treating Sources[1]

May, 2008 nerve conduction studies of the right leg were unremarkable (Tr. 296).

The same month, x-rays of the tibia and fibula were negative for fracture (Tr. 297).  Imaging

studies were negative for deep vein thrombosis ("DVT") (Tr. 310).  June, 2008 imaging

studies were negative for coronary artery disease (Tr. 307-308).  In October, 2008, Jeff S.

Pierce, D.O. found that Plaintiff's right lower extremity problems created an abnormal gait,

spasms, and weakness (Tr. 265).  He found that Plaintiff was unable to sit or stand for more

than 10 minutes at a time (Tr. 256).  He found Plaintiff limited to lifting less than 10 pounds

on a "rare[]" basis (Tr. 257).  Treating notes from the same month show hyperlipidemia (Tr.

316).  The following month, Dr. Pierce completed a "disability certificate," stating that

Plaintiff was disabled from November 25, 2008 to February 1, 2009 (Tr. 253).

February, 2009 treating notes by psychologist Dr. Mayfield state that Plaintiff

experienced mood swings and anxiety (Tr. 326, 508).  Plaintiff admitted that he took "too

much Vicodin" (Tr. 328, 510).  Plaintiff reported that he drank up to a pint of alcohol at day,

noting that he had drunk half a pint the day before his February 22, 2009 appointment (Tr.

329).  Dr. Mayfield observed that Plaintiff exhibited an appropriate affect but had difficulty

focusing (Tr. 330).  She assigned him a GAF of 42[2] (Tr. 330, 514).  Dr. Pierce's February

---

[1]Medical records predating ALJ Wilenkin's February 3, 2009 opinion are included
for comparison purposes only.

[2]A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in
social, occupational, or school functioning," such as inability to keep a job.  American
Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34

and March, 2009 treating notes state that Plaintiff experienced low back pain and lumbar radiculopathy (Tr. 268-269). In March, 2009, Dr. Pierce found that Plaintiff's muscle tone and alignment had recently worsened (Tr. 272). The same month, imaging studies of the chest were unremarkable (Tr. 284, 339, 382). Dr. Mayfield's treating notes from the same month state that Plaintiff was concerned about finances (Tr. 323).

In April, 2009, Dr. Mayfield noted that Plaintiff was in a "good mood" (Tr. 322). Dr. Mayfield noted that Plaintiff was proud of his wife and daughter but frustrated that his mother, brother, and father did not understand his disability (Tr. 322). The following month, Dr. Mayfield opined that Plaintiff was unable to work because of intractable pain (Tr. 398). She added that Plaintiff was "emotionally, socially, [and] economically" disabled (Tr. 398). She stated that Plaintiff's "doctors ha[d] given him two choices: 1) surgery and be paralyzed for the rest of his life, and 2) pain controlled by pills and injections for the remainder of his life" (Tr. 398).

In July, 2009, Dr. Pierce completed a functional assessment, finding that Plaintiff was unable to sit for more than 15 minutes or stand for more than 5 (Tr. 391, 408-409). He deemed Plaintiff incapable of any work-related walking (Tr. 391). He found that due to constant pain and depression and anxiety, Plaintiff was incapable of even "low stress" jobs (Tr. 391). August, 2009 imaging studies of the lumbosacral spine showed disc narrowing at L5-S1 with a first degree spondylolisthesis indicative of radiculopathy (Tr. 394, 473). The

---

(*DSM-IV-TR* ) (4th ed.2000).

same month, Dr. Pierce issued a "disability certificate," stating that Plaintiff was totally incapacitated until September 22, 2009 (Tr. 389). In April, 2010, Plaintiff sought emergency treatment, reporting right leg pain and swelling for the previous three weeks (Tr. 436). He was diagnosed with DVT (Tr. 437, 442, 477). Treating reports state that Plaintiff denied tobacco use but admitted to drinking eight to ten shots of whiskey per week for the last three to four years and daily cannabis use (Tr. 436, 439, 448). He was given blood thinners (Tr. 437). He was discharged after five days of inpatient treatment (Tr. 437). He was advised to cut his alcohol intake and discontinue cannabis use (Tr. 441). In May, 2010, Dr. Pierce opined that Plaintiff's muscle tone had worsened but that his condition was otherwise unchanged (Tr. 415). The same month, an ultrasound of the right knee was unremarkable (Tr. 454). May, 2010 imaging studies showed chronic DVT (Tr. 455). An imaging study of the right foot showed a heel spur (Tr. 457). A June, 2010 MRI of the lumbar spine showed only mild spondylolisthesis but also "facet arthrosis with severe bilateral neural foraminal encroachment at L5-S1" (Tr. 516).

### 2. Consultative and Non-Examining Sources

In June, 2009, F. Kladder, Ph.D. completed a Psychiatric Review Technique on behalf of the SSA, finding the presence of affective and anxiety disorders (Tr. 345, 348, 350). Dr. Kladder found that Plaintiff's restrictions in daily living, social functioning, and concentration, persistence, or pace were "mild" (Tr. 355). Dr. Kladder concluded that Plaintiff's mental impairments were non-severe, citing Dr. Mayfield's treating notes showing

improvement between February and April, 2009 (Tr. 357).

In August, 2009, E. Montasir, M.D. performed a physical examination on behalf of the SSA (Tr. 359-367). Plaintiff reported no improvement from physical therapy and that standing for more than 30 minutes or walking for more than half a block created back pain (Tr. 359). He denied headaches or respiratory problems (Tr. 360). Dr. Montasir observed that Plaintiff brought a cane but did not use it (Tr. 360). He also noted that Plaintiff ambulated "reasonably well" with a normal gait (Tr. 361). Dr. Montasir concluded that Plaintiff "should be able to work eight hours a day as far as his physical condition [was] concerned," adding that Plaintiff could stand for up to two hours at a time but had no limitation in walking (Tr. 361). He observed that Plaintiff was "awake, alert, and oriented times three" (Tr. 361).

The same month, Muhammad Mian, M.D. performed a non-examining Physical Residual Functional Capacity Assessment on behalf of the SSA, finding that Plaintiff could lift up to 10 pounds frequently; stand or walk for at least two hours in an eight-hour workday; and sit for six (Tr. 369). Dr. Mian found that Plaintiff was capable of unlimited pushing and pulling (Tr. 369). Postural limitations consisted of occasionally stooping and frequent climbing, balancing, kneeling, crouching, and crawling (Tr. 370). The Assessment limited Plaintiff to no overhead reaching and occasional handling, fingering, and feeling (Tr. 371). The Assessment found the absence of visual, communicative, or environmental limitations (Tr. 372). Dr. Mian found Plaintiff's allegations of physical limitation only partially credible, stating that he allotted "great weight" to Dr. Montasir's observations but only

"partial weight" to Dr. Pierce's November, 2008 disability opinion (Tr. 373).

### 3. Material Submitted After the ALJ Grippo's Decision[3]

In December, 2010, Dr. Pierce found that Plaintiff was unable to lift even 10 pounds and required an assistive device for ambulation (Tr. 523). He found that Plaintiff was unable to perform any climbing, balancing, kneeling, crouching, crawling, or stooping (Tr. 524). Dr. Pierce also found that Plaintiff should be limited to occasional reaching, handling, fingering, and feeling (Tr. 525). He concluded that prescribed medication caused drowsiness and that Plaintiff was required to avoid temperature extremes, vibration, humidity, hazards, and fumes (Tr. 525-526).

### D. Vocational Expert Testimony

VE Rosko testified that Plaintiff's former job as a lead housekeeping aide was classified as medium and semiskilled by the Dictionary of Occupational Titles ("DOT") but

---

[3]

Material submitted to the Appeals Council subsequent to the administrative decision is subject to a narrow review by the district court. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir.1993). Where the Appeals Council denies a claimant's request for a review of his application based on new material, the district court cannot consider that new evidence in deciding whether to "uphold, modify, or reverse the ALJ's decision." *Id.* at 695–96. Sentence six of 42 U.S.C. § 405(g) states that the court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding ..." Because Plaintiff has not requested a "Sentence Six" remand or even provided good cause for the tardy submission of Dr. Pierce's assessment, he is not entitled to a Sentence Six remand.

exertionally heavy as described by Plaintiff[4] (Tr. 35).

The ALJ then posed the following hypothetical question, taking into account Plaintiff's age, education, and work background:

> [A]ssume that such an individual has the residual functional capacity to perform less than sedentary work, that is to say sedentary work with the following additional limitations: He cannot stoop, squat, kneel, crouch, bend, twist, or torque to the extremes of range of motion; he cannot use the upper extremities above the shoulder level; he cannot engage in any prolonged walking, climbing, stairs, or ladders, or work[] around unprotected heights. He would require a sit/stand option. In addition, he would have marked limitations in concentration, persistence, and pace due to pain. Would such an individual be able to do the past relevant work of the claimant?

The VE responded that the above limitations would eliminate all gainful employment (Tr. 36).

### E.  The ALJs' Decisions

### 1.  ALJ Wilenkin's February 3, 2009 Opinion

Citing Plaintiff's medical records, ALJ Wilenkin found that Plaintiff experienced the "severe" impairment of degenerative disc disease of the lumbar spine but that the condition

---

[4]

20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

-10-

did not meet or medically equaled impairments listed in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (Tr. 44-45).  The ALJ found that Plaintiff possessed the Residual Functional

Capacity ("RFC") for sedentary work with the following additional limitations:

> [No] stooping, squatting, kneeling, crouching, bending, twisting or torquing
> to extremes of range of motion, use of the upper extremities above shoulder
> level, any prolonged walking, climbing stairs or ladders, or working around
> unprotected heights.  He is also limited to work providing for a sit/stand option
> (Tr. 46).

Citing the VE's findings from the December 15, 2008 hearing, the ALJ found that Plaintiff

could work as a cashier, cafeteria worker, badge checker, gate tender, information clerk,

lobby attendant, and surveillance monitor (Tr. 47).

ALJ Wilenkin discounted Plaintiff's allegations of disability, citing May, 2006

treating notes showing a normal gait and full range of motion (Tr. 48).  He rejected Dr.

Pierce's July, 2006 findings of disabling physical limitations, noting that they were based on

Plaintiff's subjective limitations (Tr. 48).

### 2.  ALJ Grippo's November 9, 2010 Opinion

ALJ Grippo found the absence of "new and material evidence" showing that

Plaintiff's condition had worsened since ALJ Wilenkin's February 3, 2009 (Tr. 60 citing

Administrative Ruling ("AR") 98-4(6)).  Citing the medical records, ALJ Grippo found that

Plaintiff experienced the severe impairment of lumbar spine degeneration but that the

condition did not meet or medically equal an impairment listed in 20 C.F.R. Part 404,

Subpart P, Appendix 1 (Tr. 63, 65).  The ALJ determined that Plaintiff also experienced

DVT, hypertension, and chest pain but that these conditions did not create "more than

minimal limitation" in the ability "to perform basic work activities" (Tr. 63). Likewise, the ALJ found Plaintiff's psychological limitations non-severe (Tr. 64). ALJ Grippo adopted the previous RFC for a limited range of sedentary work (Tr. 46, 64) as well as ALJ Wilenkin's job findings (Tr. 47, 73).

The ALJ rejected Plaintiff's allegations that his condition had worsened since the February, 2009 decision (Tr. 66-72). He found that Plaintiff's claims of limitations in activities of daily living ("ADLs") could not be "objectively verified with any reasonable degree of certainty" (Tr. 67). He noted that to the extent Plaintiff's allegations of psychological limitation could be credited, they were more likely attributable to alcohol and cannabis abuse (Tr. 67). The ALJ discounted the testimony of sporadic alcohol use, citing treating and consultative records stating that Plaintiff admitted to alcohol and cannabis abuse (Tr. 67).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way,

-12-

without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

Plaintiff makes three arguments for remand.  First, he disputes ALJ Grippo's November 9, 2010  finding that no "new and material evidence" was created subsequent to ALJ Wilenkin's February 3, 2009 non-disability opinion.  *Plaintiff's Brief* at 6-10 (citing Tr. 60); AR 98-4(6).  Second, Plaintiff contends that the ALJ erred by not adopting the VE Rosko's testimony that no work would be available to an individual with significant postural limitations and marked limitations in concentration.  *Plaintiff's Brief* at 10-12 (citing Tr. 36).  Last, he faults the ALJ for rejecting the disability opinions of Drs. Mayfield and Pierce.  *Id.* at 12-15.

### A.  New and Material Evidence Postdating ALJ Wilenkin's February 3, 2009 Decision

 As stated in his November 9, 2010 opinion, ALJ Grippo performed his analysis pursuant to *Drummond v. Commissioner of Social Security,* 126 F.3d 837 (6th Cir. 1997), which states that in the absence of new and material evidence postdating an earlier decision under the same Title, the later fact finder must adopt the previous RFC.  Administrative Ruling ("AR") 98-4, codifying *Drummond,* provides as follows:

> When adjudicating a subsequent disability claim with an unadjudicated period arising under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim in determining whether the claimant is disabled with respect to the unadjudicated period unless there is new and material evidence relating to such a finding or there has been a change in law, regulations, or rulings affecting the finding or method for arriving at the finding. AR 98-4(6).

 In order to be awarded benefits for his or her condition subsequent to the original

finding of non-disability, a claimant "must demonstrate that her condition has so worsened . . . that she was unable to perform substantial gainful activity." *Priest v. Social Security Admin*, 3 Fed.Appx. 275, 276, 2001 WL 92121, *1 (6th Cir. January 26, 2001)(citing *Casey v. Sec'y of Health and Human Servs.,* 987 F.2d 1230, 1232-33 (6th Cir.1993)).

Plaintiff points out that evidence created after the original administrative opinion shows new diagnoses of DVT, hypertension, and chest pain, arguing that ALJ Grippo erred by omitting them from the severe impairments at Step Two of the administrative analysis. *Plaintiff's Brief* at 8.  However, the ALJ's finding that these conditions, while new, did not create more than *de minimis* limitations is  supported by substantial evidence.[5]  ALJ Grippo noted that while Plaintiff had been diagnosed with DVT, the condition was controlled with Coumadin,  (Tr. 69 citing 437).  Consistent with this finding, April, 2010 hospital records indicate that Plaintiff was discharged without physical restrictions (Tr. 438).  The ALJ cited consultative records showing that Plaintiff's hypertension was "asymptomatic and controlled with medication" (Tr. 63 citing 360-361).   In finding that Plaintiff's chest pain was non-severe, the ALJ cited March, 2009 and February, 2010 imaging studies of the heart and chest showing unremarkable results (Tr. 63, 382, 478).

---

[5]

A "non-severe impairment" is described as one that "does not significantly limit [the] physical or mental ability to do basic work activities." 20 C.F.R. § 416.921(a).  "Basic work activities" are defined as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" hearing and speaking; the ability to understand, carry out, and remember simple instructions; and "use of judgment;" the ability to interact appropriately with supervisors and coworkers and respond to workplace changes. § 416.921(b)(1-6).

However, the newer evidence strongly supports the conclusion that Plaintiff's lumbar back condition worsened in the period between February 3, 2009 and the most recent decision. In the earlier opinion, ALJ Wilenkin cited a February, 2006 MRI of the lumbar spine showing Grade I spondylosis at L5 but "only some disc bulging at L5-S1" (Tr. 47). In contrast, the MRI studies done in June, 2010, show "severe bilateral neural foraminal encroachment" at L5-S1, indicating that the condition progressed from simply "disc bulging," to nerve root involvement consistent with Plaintiff's allegations of worsening back and lower extremity pain (Tr. 516). While portions of the newer studies overlap the earlier MRI findings, the new evidence showing severe neural foraminal encroachment at L5-S1 indicates that the spinal condition deteriorated since the earlier studies. The ALJ's finding that the June, 2010 MRI did not amount to a "significant change" stands at odds with the objective findings (Tr. 68). While it is unclear whether these studies establish that Plaintiff's back condition has worsened to the degree that he is now disabled, the ALJ erred by finding that the changes to Plaintiff's back condition were insignificant.

Further, while the ALJ acknowledged that Plaintiff experienced the severe impairment of lumbar spine degeneration, the failure to properly consider the import of the new evidence of nerve root involvement taints the Step Two finding that Plaintiff's psychological limitations were non-severe (Tr. 63-64). I am mindful that the newer MRI does not amount to proof certain that Plaintiff is presently disabled. However, the studies lend substantial credence to the treating psychologist's opinion that Plaintiff experienced significant concentrational problems as a result of intractable back and lower extremity pain, and

Plaintiff's own allegations of pain-related psychological limitations (Tr. 398). Because such limitations potentially impact Plaintiff's "basic work abilities" pursuant to 20 C.F.R. § 416.921(b)(1-6), they should be considered in light of the new evidence. *See* fn 5, above.

### B. The Hypothetical Question

Plaintiff argues that the ALJ erred by not adopting the VE Rosko's testimony that no work would be available to an individual with significant postural limitations and marked limitations in concentration. *Plaintiff's Brief* at 10-12 (citing Tr. 36).

I agree that the ALJ's Step Five analysis was flawed, albeit for different reasons than those argued by Plaintiff. Plaintiff points out that the ALJ posed only one set of limitations, eliciting the VE's response that no work would be available to a thus-limited individual (Tr. 36). Without more, in a Step Five determination the ALJ would have been required to adopt the testimony under most circumstances. *See Teverbaugh v. Comm'r of Soc. Sec.,* 258 F. Supp. 2d 702, 706 (E.D. Mich. 2003)(Roberts, J.)(VE's responses constitute the only evidence supporting a Step Five determination.). In contrast here, the ALJ Grippo's adoption of the VE's findings and RFC from the *previous* case was consistent with his finding that no "new and material evidence" had been created subsequent to ALJ Wilenkin's February 3, 2009 opinion (Tr. 46, 50, 66-67); AR 98-4(6).

Nonetheless, as discussed above, the ALJ's finding of no "new and material evidence" is contradicted by June, 2010 imaging studies showing a deterioration of Plaintiff's lumbar

spine condition.  Accordingly, job testimony given in response to the earlier hypothetical question is undermined, if not altogether invalidated by the newer evidence.  Further, while ALJ Wilenkin's RFC, later adopted by ALJ Grippo, restricted Plaintiff to a narrow range of sedentary work, it did not include possible psychological limitations as a result of pain and accompanying concentrational problems (Tr. 46, 65).  *See Varley v. HHS,* 820 F.2d 777, 779 (6th Cir. 1987) ("Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only if the question accurately portrays [the] plaintiff's individual physical and mental impairments.")(internal citations omitted); *Ealy v. Commissioner of Social Sec.,* 594 F.3d 504, 516 (6th Cir. 2010)(failure to account for the claimant's full degree of mental impairment in the hypothetical question reversible error).  The ALJ's failure to acknowledge the import of the newer MRI also invalidates the credibility determination which ALJ Grippo erroneously based on "the lack of supporting medical evidence" (Tr. 67).

### C.  The ALJ's Reliance on Non-Treating Sources

Finally, Plaintiff faults the ALJ for discounting the disability opinions of Drs. Mayfield and Pierce.  *Id.*  at 12-15.  He contends that the ALJ erred by instead adopting Dr. Montasir's August, 2009 consultative observations.  *Id.* at 12.

"[I]f the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight." *Hensley v. Astrue, 573* F. 3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v.*

*Commissioner of Social Sec.* 378 F.3d 541, 544  (6ᵗʰ Cir. 2004)).  Further,

> [i]f the opinion of a treating source is not accorded controlling weight, an ALJ must apply certain factors--namely, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source--in determining what weight to give the opinion. *Wilson,* at 544.

Moreover, "the Commissioner imposes on its decision makers a clear duty to 'always give good reasons in our notice of determination or decision for the weight we give [a] treating source's opinion.'" *Cole v. Astrue* 661 F.3d 931, 937 (6ᵗʰ Cir. 2011)(citing 20 C.F.R. § 404.1527(c)(2)).

ALJ Grippo's provided fairly detailed reasons for rejecting disability opinions by both Drs. Mayfield and Pierce.  He noted that Dr. Mayfield's opinion was undermined by the brevity of the treating relationship (Tr. 70-71) and her failure to discuss the impact of Plaintiff's alcohol and drug use in her disability opinion (Tr. 71).  The ALJ found that Dr. Mayfield's opinion was "quite general," noting further that the ultimate issue of disability was "reserved for the Commissioner" (Tr. 71).  In regard to Dr. Pierce, the ALJ noted that the treating physician's "assessments and clinical findings remained essentially unchanged from before and during the period under adjudication" (Tr. 72).  He found that Dr. Pierce's "disability certificates," which did not describe Plaintiff's physical conditions or limitations "vague and conclusory" (Tr. 72).  The ALJ once again noted that the issue of disability was "reserved for the Commissioner" (Tr. 72).

-19-

Nonetheless, the ALJ's deference to Dr. Montasir's opinion over those of Drs. Mayfield and Pierce provides grounds for remand. First, Dr. Montasir conducted the consultative examination in August, 2009 without benefit of the June, 2010 MRI studies showing that the Plaintiff's lumbar spine condition had deteriorated. While the ALJ's adoption of a non-examining opinion was not intrinsically improper, favoring older findings over more current ones may constitute reversible error. *See Hamblin v. Apfel*, 2001 WL 345798, *2 (6th Cir. March 26, 2001)(affirming an ALJ's rejection of a treating physician's "outdated" opinion on the basis that a consultive physician had performed a more recent appraisal with contradicting findings). The Sixth Circuit's holding favoring the use of updated medical information is even more applicable to the instant case, where the newer evidence is a highly detailed imaging study  and the older evidence was created by a state-hired consultive physician. *See Sayles v. Barnhart,* 2004 WL 3008739, *23 (N.D.Ill. December 27, 2004)(adoption of "outdated and inadequate" non-treating findings created prior to a diagnosis of diabetes grounds for remand). Moreover, the ALJ's misinterpretation of the June, 2010 imaging studies quite possibly colored the relative weight accorded the treating and consultative sources. For this reason also, a remand for further fact-finding is appropriate.

Finally, while the above discussed errors present grounds for remand, the transcript's multiple references to Plaintiff's substance abuse and its impact on the disability claim is of some concern. Moreover, although the deterioration of Plaintiff's back condition may well

support his claim of disability on remand, the record before this Court shows a strong but not

"overwhelming" case for benefits. The ultimate decision is best entrusted to the ALJ on

remand. I therefore recommend that the case be remanded for further administrative

proceedings rather than an award of benefits. *Faucher v. Secretary of Health and Human*

*Services,* 17 F.3d 171, 176 (6th Cir.1994).


## CONCLUSION

For the reasons stated above,  I recommend that Defendant's Motion for Summary

Judgment be DENIED, and that Plaintiff's Motion for Summary Judgment  be GRANTED

to the extent that the case be remanded for further administrative proceedings consistent

with this Report.

Any objections to this  Report and Recommendation must be filed  within 14 days of

service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR

72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v.*

*Secretary of HHS,* 932 F.2d 505 (6th Cir.  1991); *United States v. Walters,* 638 F.2d 947 (6th

Cir.  1981).  Filing of objections which raise some issues but fail to raise others with

specificity will not preserve all the objections a party might have to this Report and

Recommendation.  *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.  1991); *Smith v.*

*Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir.  1987).  Pursuant to E.D.

Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.


Dated: June 14, 2013                       s/R. Steven Whalen
                                           R. STEVEN WHALEN
                                           UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on June 14, 2013, electronically and/or by U.S. Mail.

                                           s/Michael Williams
                                           Relief Case Manager for the Honorable
                                           R. Steven Whalen